# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROLYN ORAVITZ, )<br>        Plaintiff   )<br>                    )<br>  vs.                       )<br>                    )<br>                    )<br>SAXONBURG BOROUGH, )<br>        Defendant  ) | Civil Action No. 10-125<br>Chief U.S. District Judge Gary L. Lancaster/<br>Chief U.S. Magistrate Judge Amy Reynolds Hay |

## REPORT AND RECOMMENDATION

**I.    Recommendation**

In December 2009, Carolyn Oravitz ("Oravitz" or "the Plaintiff"), an Allegheny County resident, filed suit against a single Defendant, Saxonburg Borough ("the Borough"), in the Court of Common Pleas of Allegheny County, Pennsylvania. There, she alleged that she had been subjected to repeated sexual harassment by a police officer who, at the time of the alleged harassment, was employed by the Borough. In the single count Complaint, the Plaintiff claimed that the Borough deprived her of "rights secured under Section 5(i)1 of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. §§ 951-963, "and other laws" when it failed to take steps necessary to end the harassment. (ECF No.1 at 15). She also alleged that the Borough's failure to act deprived her of "rights, privileges and immunities secured by the Constitution." (Id.) Because the Complaint purported to raise a federal constitutional claim, the Borough removed the matter to this Court, and filed a Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6). (ECF No.2). Oravitz then filed an Amended Complaint (ECF No.6) in which she named the Borough, present and past Borough officials, and former Borough police officer, Erik Bergstrom ("Bergstrom"). The Defendants' Motions to Dismiss the Amended Complaint for

failure to state a claim (ECF Nos. 10, 22) are pending. It is respectfully recommended that these Motions be granted.

## II. REPORT

### A. Standard of Review

In ruling on a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). A complaint does not satisfy the requirements of Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (modifying longstanding 12(b)(6) standard set out in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009) (clarifying that Twombly standard applies beyond antitrust context). To survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must "make a 'showing' rather than a blanket assertion of an entitlement to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). In other words, she must supply "enough facts to raise a reasonable expectation that discovery" will reveal evidence supporting her claim. Id. at 232 (quoting Twombly, 550 U.S. at 556 n.3).

The United States Court of Appeals for the Third Circuit has instructed:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to

"show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Where a court is unable to infer more than a mere possibility of misconduct, the complaint does not "show" that the pleader is entitled to relief.

With this standard in mind, the Court turns to the Amended Complaint.

### B. Background[1]

On April 13, 2006, Oravitz called Bergstrom, a Borough police officer and long time friend, in order to obtain a proof of service of legal papers. Bergstrom, who was on duty at the time, stated that he would get what she needed. (ECF No.6, ¶¶ 6, 80). Six days later, he delivered the proof of service to the Plaintiff at her home. (Id. at ¶ 7). That night, Bergstrom began to harass Oravitz via sexually graphic and offensive telephone calls and text messages.[2] This harassment occurred frequently through the end of June 2006. (Id. at ¶ 14).

In August 2006, "Oravitz contacted Officer Bergstrom and asked him to stop." (Id. at ¶ 15). She also called the Borough's Mayor in order to file a formal complaint against Bergstrom, and was told that she must do so by e-mail. According to the Plaintiff, "This requirement . . . was a roadblock to suppress the filing of complaints" and "was part of a deliberate indifference to Plaintiff's Civil Rights." (Id. at ¶¶ 17, 18). Although the harassment stopped temporarily, it resumed in January 2007. (Id. at ¶ 20).

On February 9, 2007, Plaintiff "and her husband attempted to confront Officer Bergstrom

---

[1]The facts recounted here are taken directly from the Plaintiff's Amended Complaint.

[2]Oravitz provides one example of a graphic and offensive comment. She states Bergstrom wrote in a text message that he "[didn't] want [a] relationship, just wanted to get laid." ( Id. at ¶ 86).

3

at the Harrison Hills Fire Hall." (Id. at 22). This effort was unsuccessful, and offensive calls began again the next day. (Id. at 24). At about the same time, Bergstrom initiated a practice of driving past the Plaintiff's home, intimidating her to the extent that she and her husband erected a privacy fence in front of the house. (Id. at ¶¶ 24-25). On March 7, 2007, Oravitz e-mailed the Borough Mayor, complaining for the second time about Bergstrom's conduct. The Mayor advised Bergstrom that Oravitz had filed a complaint. The Plaintiff contends that by failing to keep her complaint confidential, the Mayor again exhibited "deliberate indifference to [her] Civil Rights." (Cite).

Bergstrom could not "retaliate against the Plaintiff and her employment, because she was a homemaker." Instead, he interfered with her husband's work, intentionally causing Oravitz emotional distress. (Id. at ¶¶ 31-32). After Bergstrom told Mr. Oravitz's employer about the complaints filed by the Plaintiff, Mr. Oravitz was given a one week unpaid suspension. (Id. at ¶ 32).

On March 29, 2007, the Plaintiff complained for a third time, this time sending a letter to the Borough "Solicitor and all . . . Counsel [sic] members." (Id. at ¶ 33). A copy of this letter was given to Bergstrom "so he could investigate." (Id. at ¶¶ 33-34). In retaliation for this complaint, Bergstrom again spoke with Mr. Oravitz's boss, who then went to the Oravitz home in an attempt to dissuade the Plaintiff from pursuing her complaint. Two days after this visit, Mr. Oravitz was fired. (Id. at ¶ 38).

On May 7, 2007, Oravitz received a letter from the Mayor addressing her complaints. He wrote:

> It appears to me that this is not a Borough matter, but rather

> a private matter between you and Officer Bergstrom. In
> addition, the documentation you submitted is insufficient
> and appears not to be true/and or correct.

(Id.). According to the Plaintiff, this letter evidenced deliberate indifference to the violation of her civil rights. (Id.).

On July 7, 2007, the Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"). In December 2007, she also contacted the Police Review Board of the City of Pittsburgh, but was told that the Board lacked jurisdiction over the matter. In her Amended Complaint, the Plaintiff contends that the Borough's lack of an effective procedure for resolving complaints against its police officers violated her civil rights. (Id. at ¶ 44). Early in 2008, Oravitz hired counsel who was notified by the Borough that the Plaintiff's claim lacked merit. (Id. at ¶ 48).

The PHRC issued a right to sue letter in January 2009. (Id. at ¶ 52). The same month, Bergstrom was suspended from the Borough police force pending investigation of multiple issues unrelated to the Plaintiff's claim.[3] (Id. at ¶¶ 53-54). According to Oravitz, the Borough's failure to address individual issues as soon as they were brought to the Borough's attention illustrated the Borough's deliberate indifference to her civil rights because "it was not her complaint but the combination of all complaints that forced the Borough to seek the suspension of Officer Bergstrom." (Id. at ¶ 55). At the conclusion of the investigation in May 2009, Bergstrom was suspended without pay. He resigned five months later. Oravitz contends that the Borough

---

[3]According to Oravitz, these issues included improper handling of drunk driving cases; downloading a computer registry cleaner; accepting gifts from a company that supplied Halloween bags and mints for the Saxonburg carnival; swearing and raising his voice in public; failing to keep police matters confidential; being intoxicated at the Saxonburg Volunteer Fire Club; and unspecified "other evidence." (ECF No.3 at ¶ 64).

exhibited deliberate indifference to her rights when it later gave Bergstrom a favorable recommendation for an opening on the Fawn Township police force - a job that Bergstrom ultimately accepted. (Id. at ¶¶ 58-60).

According to the Plaintiff, the cumulative effect of Bergstrom's harassment and the Borough's failure to respond to her complaints caused her to suffer stress-induced headaches which interfered with her activities of daily life and caused her to lose two jobs. (Id. at ¶¶ 61-64).

In Count I of the Amended Complaint, which is titled "Civil Rights Act of 1871, 42 U.S.C. 1983," Oravitz alleges that Bergstrom, the Borough Mayor, and the individual members of the Borough Council "maintained a policy, practice, custom or usage of subjecting Carolyn Oravitz to the deprivation of her rights, privileges and immunities secured by the Constitution, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963" - specifically Section 5(i)1.[4] (Id. at ¶ 66)  In addition to compensatory and punitive damages, Oravitz asks that the Borough "be enjoined from offering police review board services that are less than the services contractually provided by the Pittsburgh Police Review Board for other municipalities in Allegheny County," and "from offering police training programs that are less than the programs contractually provided by the County for other municipalities in Allegheny County." (Id. at ¶ 74(a) and (b)).

In Count II, headed "Sexual Harassment in Violation of the Pennsylvania Human Relations Act at 43 P.S. §§951-963," Oravitz alleges that the Borough is a place of public

---

[4] This section of the state law deals with discrimination in public accommodations. Oravitz contends that the "the Borough of Saxonburg is a place of public accommodation," (ECF No.6 at ¶ 76), and that she was "denied equal access to public services" in that she was unable to obtain legal papers or have her complaints reviewed without sexual harassment and retaliation. (ECF No.3 at ¶ 76-77).

accommodation to which she was denied equal access. (Id. at 19).⁵ Specifically, she alleges that she was unable to obtain legal papers or an impartial review of her complaints without sexual harassment and retaliation. (Id.). She also claims that as a result of the Borough's violation of Section 955 5(i)(1)of the PHRA,⁶ she was deprived of liberty for a substantial period of time, which caused her to suffer anxiety, distress, discomfort, embarrassment, impairment of her reputation, and the loss of spousal companionship. (Id. at ¶ 94). Although the heading for this Count refers only to state law claims, the body of that Count contains a federal claim: "Plaintiff alleges that in allowing Officer Bergstrom to commit the acts and things complained of herein, the Defendants denied and deprived Plaintiff of her rights guaranteed under the Constitution and laws of the United States." (Id. at ¶ 68).

### C.     Discussion

---

⁵In her Brief in Opposition to the Motion to Dismiss, Oravitz also contends that "[a] police station is a place of public accommodation." (ECF No.15 at 29).

⁶This portion of the PHRA makes it illegal:

> (i) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any public accommodation, resort or amusement to:
>
> (1) Refuse, withhold from, or deny to any person because of his race, color, sex, religious creed, ancestry, national origin or handicap or disability, or to any person due to use of a guide or support animal because of the blindness, deafness or physical handicap of the user or because the user is a handler or trainer of support or guide animals, either directly or indirectly, any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement.

The term "public accommodation" includes "all Commonwealth facilities and services, including such facilities and services of all political subdivisions thereof . . . ." 43 Pa. Cons. Stat. Ann. §954.

The Defendants challenge the adequacy of the Amended Complaint on a number of grounds: (1) the Plaintiff has failed to state any federal claim upon which relief can be granted; (2) the federal claims are time barred; (3) the individual Defendants are entitled to qualified immunity; (4) there is no cause of action under the Pennsylvania Constitution or the PHRA; and (5) punitive damages are not available against the Borough. The Court reaches only the first of these challenges. Because the Plaintiff has failed to state a federal claim against any of the Defendants, the Court should decline to exercise supplemental jurisdiction over the state claims, and should dismiss the Amended Complaint in its entirety.

### 1. **Claims Made Pursuant to 42 U.S.C. § 1983**

42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." This provision "does not create substantive rights, but instead provides a vehicle for vindicating a violation of a federal right." Morrison v Lambie, No. 2:08cv242, 2009 WL 688910, at * 3 (W.D. Pa. March 12, 2009) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)).

A section 1983 claim has two components: (1) a violation of a right, privilege or immunity secured by the Constitution and laws of the United States; and (2) proof that the violation was committed by a state actor. See Berg v. County of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) (stating that a plaintiff "must demonstrate that a person acting under color of state law deprived him of a federal right."). The claim against Bergstrom should be dismissed because the Plaintiff

has not demonstrated that his actions were taken under color of state law.

        a.        **Bergstrom's Status as a State Actor**[7]

There is no "simple line" between state and private actors. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). The Court of Appeals for the Third Circuit has explained that in drawing this distinction, "'[t]he principal question . . . is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (quoting Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)) (internal quotation marks and citation omitted).

The terms "under color of law" and "state action" are interpreted identically under the Fourteenth Amendment. Id. "Three broad tests generated by Supreme Court jurisprudence . . . determine whether state action exists: (1) 'whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state;'(2) 'whether the private party has acted with the help of or in concert with state officials;' and (3) whether 'the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'" Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)) (other alterations, internal quotation marks and citations omitted). Using these tests, the Court finds that the allegations in the Amended Complaint are not sufficient to establish that Bergstrom was a state actor.

It is generally true that "a public employee acts under color of state law," West v. Atkins, 487 U.S. 42, 49-50, (1988) (citations omitted), though this is not always the case. "An otherwise

---

[7]The parties do not address this issue.

private tort is not committed under color of law simply because the tortfeasor is an employee of the state." Mark, 51 F.3d at1150. A state employee acts under color of law only where his act involves the "[m]isuse of power, possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." United States v. Classic, 313 U.S. at 299, 326 (1941). Thus, even the acts of a police officer who is on duty and in uniform will not constitute state action unless they are tied to the performance of police duties. Mark, 51 F.3d at 1151 (citations omitted). This principle is consistent with the Court of Appeals for the Third Circuit's finding that a firefighter who committed arson did not act under color of law. See id. at 1151-52.

Here, the Court must determine whether the Plaintiff has alleged that Bergstrom's offensive conduct was "sufficiently related to the performance of [his law enforcement duties] such that the Court should find that [he] was acting under color of state law." Ragasa v. County of Kauai, No. Civ. 03-00540, 2006 WL 753021, at *6 (D.Haw. March 22, 2006). The Court has carefully reviewed the Amended Complaint, and finds that she has not. None of the allegations establishes that Bergstrom's alleged wrongdoing was made possible by or related - except in the most tenuous way - to his status as a police officer.

The alleged wrongdoing did not involve an employer-employee relationship,[8] or take place in a context where Bergstrom exercised the power of his position to exert influence over the Plaintiff. Oravitz admits that when the harassment began, she and Bergstrom had been friends for many years. Based on this friendship, she requested the favor of his help to secure a proof of

---

[8]Although the Plaintiff refers repeatedly to the "hostile environment" created by the Defendants' actions, she was not employed at the time of the alleged harassment, and does not allege a violation of Title VII, (See ECF No.15 at 29) (clarifying that Amended Complaint does not allege discrimination in the workplace). Oravitz does allege, without citation to legal authority, that she was subjected to a hostile environment generally. She also states that her husband was subjected to a hostile work environment, but her husband is not a party to this action.

10

service. Oravitz does not allege that the alleged harassment was connected with the proof of service, that she could not have obtained the document without his assistance, or that Bergstrom indicated that he would withhold his help or exercise his authority as a police officer unless Oravitz acceded to his sexual demands.

Bergstrom's wrongful acts were not in any material way different from that which might have been inflicted by a private actor. "Any private citizen who [was] not clothed with the authority of state law could have performed these acts. While the[ ] alleged actions may have been taken by [a] public employee[ ] during the hours of [his] employment, those facts are merely incidental and are not the cause of [the Plaintiff's] alleged injuries." Ragasa, 2006 WL 753021 at * 6. "[I]t is the plaintiff's burden to plead and ultimately establish, the existence of a 'real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate [that] action was taken 'under color of state law.'" David v. City and County of Denver, 101 F.3d 1344, 1353 (10th Cir. 1997) (quoting Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir.1995)). Oravitz has not met that burden. The fact that Bergstrom harassed Oravitz from the police station on a police telephone or in driving past her home in a police car does not, without more, alter the Court's conclusion. See Haines v. Fisher, 82 F.3d 1503, 1508 (10th Cir.1996) (finding that police officers' who committed prank robbery using multiple items of police property did not act under color of law because state authority not used to carry out plan).

Because Oravitz does not allege facts sufficient to support a plausible claim that Bergstrom was a state actor, the federal claims against him should be dismissed.

      **b.**      **Violation of a Federal Right**

The Court focuses next on whether Oravitz has set out allegations sufficient to establish

the second requirement of a valid claim made pursuant to section 1983 - violation of a federal right.[9] In formulating a section 1983 claim, a plaintiff may not rely on generalities to establish the source of the right alleged to have been violated. The "exact contours" of that right "must be determined." Berg, 219 F.3d at 268 (citing Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Oravitz states:"[f]reedom from sexual harassment is a right secured by the Fourteenth Amendment of the United States Constitution."[10] (ECF No.15 at 7). Because the right to be free from sexual harassment appears nowhere in the Fourteenth Amendment, the Plaintiff leaves to the Court the task of determining which clause of that Amendment she intended to invoke. In order to give the Plaintiff the benefit of every doubt, the Court will review every basis for a Fourteenth Amendment claim that is arguably implicated by the allegations in the Amended Complaint.

Equal Protection

In the brief opposing the Defendants' Motions to Dismiss, Oravitz follows her assertion of a Fourteenth Amendment violation with citations to Boneberger v. Plymouth Twp., 132 F.3d 20 (3d Cir. 1997) and Andrews v. Philadelphia, 895 F.2d 1469 (3d Cir. 1990).[11] In both of these

---

[9]Because the Court has concluded that Bergstrom was not a state actor, it refers here only to the municipal defendants. Were Bergstrom a state actor, the analysis of whether the Plaintiff has adequately alleged violation of a federal constitutional or statutory right would apply to him as well.

[10]Section One of the Fourteenth Amendment reads "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[11]The Plaintiff also cites Pennsylvania v. Porter, 659 F.2d 306 (3d Cir. 1981), stating that the facts in this case "echo" those in Porter. (ECF No.15 at 21). The Court disagrees. In Porter, the state, acting parens patriae, brought suit against a police officer and officials of the Borough of Millvale in order to enjoin the Borough's bad faith tolerance of ongoing constitutional violations on the part of a police officer. These alleged violations included illegal arrests, serarches, seizures, excessive force, beatings of persons in custody, and intimidation of potential witnesses against him. Here, the allegations against Bergstrom are, at best, grounded in state law, and neither his conduct nor the Borough's alleged failure to act was ongoing.

cases, female police officers brought section 1983 claims based on the Fourteenth Amendment's Equal Protection Clause, alleging sexual harassment in an employment context. To the extent that Oravitz attempts to allege that she was denied equal protection, her claim fails.

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike. The Plaintiff does not identify any similarly situated individual. She contends that "her protected class is sex, female," (ECF No.6 at ¶ 81), but does not allege facts to establish that females received inferior treatment at the hands of the municipal defendants. Nowhere in the Amended Complaint, or in her brief opposing the Defendants' Motion to Dismiss, does Oravitz explain her assertion that the Borough treated her differently that it did others who complained or sought to complain about the conduct of Bergstrom or any other police officer. The Amended Complaint is devoid of facts relating to the gender of those lodging complaints against Bergstrom, and certainly does not support the allegation that complaints made by males were treated more favorably than those made by females, or that sexual harassment complaints were treated less seriously than other types of complaints. In fact, Oravitz alleges that the municipal defendants gave *all* complainants and *all* types of complaints inadequate attention. (See ECF No.6 at ¶ 44) (stating that there is no impartial method for resolving complaints generally); (Id. at ¶ 54-55) (numerous types of complaints were made against Bergstrom and the municipal defendants failed to act on any of them); (Id. at ¶ 56) (combination of all complaints - including the Plaintiff's - "forced the Borough to seek" Bergstrom's suspension). Insofar as Oravitz intended to state a federal equal protection claim, the factual allegations in the Amended Complaint are inadequate.

Procedural Due Process

Although she does not refer to the Due Process Clause, Oravitz alleges that the municipal Defendants actions interfered with a liberty interest in that they impaired her reputation. She also states that the "[c]omplaint resolution procedure violated [her] Civil Rights." (ECF No.6 at ¶ 44, 94). This language, although it falls within the state law count of her Amended Complaint, suggests that Oravitz may have intended to assert a procedural due process claim.

"To state a viable claim under section 1983 for violation of [her] due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to h[er] did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). Hill has failed to establish the first prong of a procedural due process claim.

In order to establish a viable claim for deprivation of a liberty interest in reputation, "a plaintiff must show a stigma to [her] reputation *plus* the deprivation of some additional right or interest." McCarthy v. Darman, No. 09-3015, 2010 WL 1220968, at * 4 (3d Cir. March 30, 2010) (quoting Hill, 455 F.3d at 326) (emphasis added). Stigma is established where the offending statement was made publicly and was false. Id. The Amended Complaint does not contain a single factual allegation which could be construed to establish stigma. Oravitz does not allege that she was defamed or that *any* information about her - let alone false information - was made public. Even had the Defendants publicized facts regarding Oravitz's interaction with them or with Bergstrom, it is impossible to discern how this information could have been construed as reflecting negatively on the Plaintiff. Because the factual allegations are insufficient to support

14

the assertion that she suffered stigma, the Plaintiff's procedural due process claim should be dismissed.

### Substantive Due Process

As the Court has explained, Oravitz has not alleged deprivation of an interest in property, and has not established a plausible claim for deprivation of a liberty interest. These shortcomings in the Amended Complaint preclude her ability to establish a violation of substantive due process. In order to state a substantive due process claim, a plaintiff must show that she has been deprived of a fundamental liberty or property interest within the meaning of the Fourteenth Amendment. See County Concrete Corp. v. Twp. of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) (stating that substantive due process claims require plaintiff to demonstrate that arbitrary and capricious governmental act deprived him of protected interest); Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 426-27 (3d Cir. 2003) (holding that to establish a substantive due process claim, plaintiff must show violation of a protected interest); Nicholas v. Pa.. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) (explaining that substantive due process does not apply every time a governmental entity deliberately or arbitrarily abuses governmental power, but only where plaintiff shows violation of a fundamental right derived from the Constitution). Because the Plaintiff has not alleged that she was deprived of an interest in property, and has failed to allege facts sufficient to state a plausible claim that she was deprived of a liberty interest -  much less a fundamental liberty interest - she has failed to state a claim for violation of a Fourteenth Amendment substantive due process right.

**2.     The State Law Claims**

Pursuant to the provisions of 28 U.S.C. § 1367(c)(3), a District Court may "decline to exercise supplemental jurisdiction over a [state law] claim . . . if [it] has dismissed all claims over which it has original jurisdiction . . . ." In fact, where all federal claims have been dismissed prior to trial, the Court is obligated to dismiss the "state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). See also King v. County of Gloucester, No. 07-3954, 2008 WL 5158744, at * 6 (3d Cir. Dec.10, 2008) (quoting Novak, 503 F.3d 572, 583 (6th Cir.2007)) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). Because the Court recommends that all federal claims raised in the Amended Complaint be dismissed, and does not find any factor favoring consideration of the Plaintiff's state law claims, it recommends that the state claims be dismissed as well.

### III. CONCLUSION

For each of the reasons set out above, it is respectfully recommended that the Motions to Dismiss filed by the Defendants (ECF Nos. 10, 22) be granted with prejudice as to the federal claims. The Plaintiff is represented by counsel, and the inadequacies in these claims were brought to his attention in the Defendant's first Motion to Dismiss. (ECF No. 2). The Amended Complaint is equally deficient, giving the Court every reason to conclude that additional amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (leave to amend need not be granted where amendment would be futile) The Defendants' Motions to Dismiss the state claims should be granted without prejudice to refiling in state court.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 4 August, 2010

cc: Hon. Gary L. Lancaster

Counsel of Record via CM-ECF